**HILL et al. v. TURNER.**

No. 2365.

Court of Civil Appeals of Texas. Eastland.

Oct. 13, 1942.

490

T. E. Knight, of Aspermont, and McMahon, Springer & Smart, of Abilene, for appellants.

Coombes & Andrews, of Stamford, for appellee.

PER CURIAM.

At the first primary election of the Democratic Party in Stonewall County on the 25th of July, 1942, Dan Hill and G. Ross Turner were opposing candidates for the nomination of the Democratic Party for the office of Sheriff and Tax Collector and Tax Assessor of Stonewall County. On the 1st day of August, 1942, the County Executive Committee canvassed the returns from the election precincts and declared that G. Ross Turner had received 766 votes and that Dan Hill had received 764 votes, and that Turner had received a majority and was duly and regularly nominated for said office and certified the same in accordance with the law and delivered the certified list to the County Clerk. Thereafter, about the 6th day of August, 1942, Dan Hill filed an election contest before the Democratic Executive Committee of Stonewall County, reciting the foregoing facts and alleging that said election and nomination were fraudulent and illegal; that Hill, not Turner, had received a majority of the votes cast, and that Hill should be declared the nominee. He alleged that 16 named persons voted illegally and fraudulently, in that, they were not residents of Stonewall County; that they voted for Turner, and that their votes were counted; that the counting of said votes by said Committee was illegal and fraudulent, and but for said illegal votes Hill would have received a majority of the votes cast for said office; that

two other persons voted for Hill whose votes were not counted; that they were legal voters and their votes should have been counted, but their votes were thrown aside illegally and fraudulently. Hill prayed that his election contest be heard, and for "a full and complete hearing and determination of the facts and the law in this contest * *." The Executive Committee, after due notice to Turner, set a day for a hearing and heard the election contest brought by Hill. Turner filed a plea to the jurisdiction of said County Executive Committee to determine said election contest, which was overruled. The Executive Committee decided the contest in favor of Hill and certified his name as the nominee, to which order Turner excepted and gave notice of appeal.

Thereafter, on the 19th day of August, G. Ross Turner presented to the District Court of Stonewall County his petition for mandamus and injunction. Turner alleged the facts heretofore recited, or mentioned, and, among other things, alleged that Hill's contest was not filed in accordance with Article 3125, as amended by House Bill No. 857, Chapter 635, of the Acts of the Forty-Seventh Legislature of Texas, Vernon's Ann.Civ.St. art. 3125; that said Executive Committee did not act within the terms of said statute; that its findings were not based upon any votes found by said Committee to be prima facie illegal; that the Executive Committee passed on allegations of fraud and illegality in the conduct of said election, which involved questions of law and mixed questions of law and fact, of which, under Article 3130 as amended by House Bill No. 857, Vernon's Ann.Civ.St. art. 3130, the District Court had original and exclusive jurisdiction. That said Executive Committee, in determining the questions presented, heard questions of law and mixed questions of law and fact, and its findings were based thereon; that said Committee opened the ballot box contrary to law and based its findings upon questions of law and mixed questions of law and fact and upon and from the ballots after opening the ballot boxes, contrary to law. That under Article 3148, as amended by House Bill No. 857, Vernon's Ann.Civ.St. art. 3148, the District Court alone had authority to open the boxes and determine such issues and recount the ballots. Turner alleged that said Committee was without jurisdiction or authority to hear and determine said contest, or open the ballot boxes, and that its

said actions were contrary to said statutes as amended in 1941, and that its actions were void. Turner alleged that he had a meritorious defense to the grounds of contest alleged by Hill, but interposed no defense to the merits before the Committee because the Committee was without jurisdiction to hear said contest or any defense thereto; that Hill did not file his suit in the District Court; that the District Court of Stonewall County had original and exclusive jurisdiction to hear and determine the election contest; that if Hill had brought such a suit in the District Court, he, Turner, would have joined issues on his grounds of contest, and would have disproved such grounds and would have shown by competent evidence that 19 illegal votes were cast at said election for Hill; that same were illegally counted for Hill, and that in no event was Hill entitled to the nomination; that the Chairman of the Democratic Executive Committee, in accordance with the findings of said Committee, on canvassing the election returns, issued and filed with the County Clerk a certificate of the nomination of Turner, but when the Executive Committee on the 14th day of August heard Hill's contest of said election the County Chairman refused to certify such results to the County Clerk, etc. That the Executive Committee, unless restrained, would certify to the County Clerk the name of Hill as the nominee of the party for said office, and that, unless restrained, said clerk would list Hill's name as the nominee of the Party for said office and publish the same and cause the same to be printed on the official ballot at the general election in November, and that, unless required to do so by mandamus, said parties would refuse to certify, list and have printed the name of Turner as the nominee. The appointment of a Clerk Pro Tempore and a person to serve process and the issuance of the indicated writs of injunction and mandamus were prayed for.

Upon a hearing had in the District Court on the 13th day of August, 1942, the Court held that said Executive Committee was without authority to hear and determine the matters presented by Hill's election contest, and was without jurisdiction to make the findings it made and was without authority to open the ballot boxes in the determination of said contest, and that its orders were void, because, under the provisions of House Bill 857, the District Court had been given original and exclu-

sive jurisdiction to hear and determine the contest. The Court enjoined Hill from pretending to be the nominee of the Party for said office; enjoined the Committee from certifying to the Clerk Hill's name as the nominee for said office, and enjoined the Clerk from listing and publishing Hill's name as such nominee and from having Hill's name printed upon the official ballot at the general election. The Court further commanded the Clerk to cause Turner's name to be published as such nominee; to have Turner's name to be printed on the official ballot at the general election, and commanded the Chairman of said Executive Committee to certify the name of Turner as such nominee and denied all relief sought by Hill. Hill excepted to the judgment and gave notice of appeal to this Court and filed and had approved a supersedeas bond.

The broad question presented by this appeal is whether or not the Executive Committee had power or jurisdiction to hear and determine Hill's election contest. Stated differently, the question is whether or not the Legislature in 1941 so amended and changed the law as to deprive the Executive Committee of any power or jurisdiction to thereafter hear election contests, and granted to the District Courts exclusive jurisdiction and power to hear an election contest.

Article 3124 prior to 1941 provided and still provides that after the ballots have been counted, the precinct election judges shall make out triplicate returns, showing (1) the total number of votes polled at such box; (2) the total number of votes cast at such box for each candidate. It provides that such returns shall be signed and certified as correct by the judges and clerks of the election precinct, and that one copy of said return shall be delivered to the chairman of the county executive committee; that the chairman of the executive committee, upon receiving the returns, shall order the members of the committee to convene, and that the returns shall be opened and canvassed by said committee.

Article 3125, prior to its amendment in 1941, provided: "At the meeting of the *county executive committee,* provided for in Article 3124, returns from the election precincts of the county shall be canvassed by the committee, and the result of the election declared by it." It further provided that the chairman of said committee should make a list of candidates who had received

the necessary votes to nominate and certify the same and deliver it to the county clerk. House Bill No. 857 amended Article 3125 and many other articles of the statutes relating to elections and their contests. By such amendment the following was added to Article 3125: "Within the meaning of this Act, such canvass shall include an actual checking and comparison of the voting lists with the tally lists and return sheets, and a mere tabulation of votes shown by the return sheets shall not be deemed a compliance with this provision. All discovered errors in the returns shall be corrected before the results of the election are certified, and upon the sworn statement of any candidate filed with the committee before the actual printing of the official ballot, setting out alleged errors in the primary election returns as certified by the county executive committee, the said committee shall be reconvened for the investigation and consideration of such alleged error, which provision is hereby declared to be mandatory and may be enforced by writ of mandamus. The said committee shall have the power to exclude any vote that is prima facie illegal, but any vote involving a question of law, or mixed question of law and fact shall not be determined by the committee."

When further provisions of said House Bill No. 857, which became the law in 1941, are considered, it is readily apparent that said added provision was intended to permit the filing of a motion for rehearing or reconsideration of the action of said committee in canvassing the returns, but did not give to said committee any power to hear or jurisdiction over an election contest.

Said House Bill No. 857, Sections 2, 3, 4, amended Articles 3126, 3128, and 3129, Vernon's Ann.Civ.St. arts. 3126, 3128, 3129. The amendment added to the last Article a provision that if a contest be pending, the publication or posting as to that office should be deferred until the contest was finally determined.

Prior to 1941, Article 3130 read: "All objections to the regularity or validity of the nomination of any person, whose name appears in said list, shall be made within five days after such printing or posting, by a written notice filed with the county clerk, setting forth the grounds of objections. In case no such objection is filed within the time prescribed, the regularity or validity of the nomination of no person whose name is so printed or posted, shall be thereafter contested." As amended in 1941, said Article provides: "The *District Court* shall have *original* and *exclusive* jurisdiction of all contests for nominations growing out of primary elections. Any candidate desiring to contest the declared result of any primary election in which he was a candidate, shall file his suit in the *District Court* within ten (10) days from the date of declaring the result by the executive committee, and process shall be served upon the opposite party as in other civil suits, except that the return day thereof shall be fixed by the District Judge. However, upon the filing of any such suit, the contestant shall forthwith deliver, or cause to be delivered, a true copy of his petition or complaint to the opposite party. The filing of the suit shall be immediately called to the attention of the District Judge by the Clerk of said Court. If the *District Court* be then in session, the Judge thereof shall set the said contest for trial at a date not more than ten (10) days from the date of the filing of said contest. If the *District Court* be not in session at said time, the Judge thereof shall order a special term of said *Court* to be convened not later than ten (10) days from the filing of such contest for the hearing of same, and in either case, the said contest shall have precedence over all other matters. The contestee shall file his answer within five (5) days from the filing of such suit, but either party, or both, shall have the right to amend before announcing ready for trial and set up additional causes of action or matters of defense, as the case may be. Any further changes in the pleadings shall be within the sound discretion of the *Court*. In the trial of such cause, the trial judge shall have wide discretion as to matters of pleading, procedure and admissibility of evidence, the purpose of this article being to subserve the ends of justice, rather than strict compliance with technical rules of pleading, procedure, and evidence. The *District Court* shall have the *exclusive* power to determine the regularity of the election in the county or any precinct, and the legality or illegality of any ballot involving a question of law, or mixed question of law and fact. When the issues involved in such contest have been adjudicated, the *District Court* shall cause its decision to be certified to the county clerk of the County." Vernon's Ann.Civ. St. art. 3130.

Article 3131 was amended so as to provide that the clerk should have the names of the successful candidates printed on the official ballot after all contests had been determined. Vernon's Ann.Civ.St. art. 3131.

Article 3146, *prior to 1941*, read: *"In all contests for a primary election* or nomination of a convention based on charges of fraud or illegality in the method of conducting the elections or in selecting the delegates to the convention, or in certifying to the convention, or in nominating candidates in State, district, county, precinct or municipal conventions, or in issuing certificates of nomination from such conventions, *the same shall be decided by the executive committee* of the State, district, or county, as the nature of the office may require, each executive committee having control, in its own jurisdiction, *or in* term time or vacation *by the district court* of the district where the contestee resides; *said executive committee and the district courts having concurrent jurisdiction."*

As changed by the amendment in 1941, Article 3146 *now* reads: *"Except for a place on party tickets for public elective offices, all contests* within a political party *shall be decided by the* State, District, or County Executive Committee, as the nature of the office may require, each such Committee to retain all such powers and authority now conferred by law." Vernon's Ann. Civ.St. art. 3146.

Article 3147, as it existed prior to 1941, provided that contests for state office should be heard before the *Executive Committee* in Austin, and that other contests between candidates, including county candidates, the *committee* might hold its hearings in the county of the residence of the contestee, or where the fraud or illegality was alleged to have occurred. As amended in 1941, Article 3147 provides that contests for nominations for state offices shall be heard before the District Court of Travis County, and that the venue of contests for county offices shall be in the county where the cause of action originated. It provides that the *district court* may change the venue to an adjacent county, and that "the *District Court* of the county to which such contest is transferred shall be governed by all the provisions of this Act." Vernon's Ann.Civ.St. art. 3147.

Article 3148, R.S.1925, provided as follows: "The complaining candidate, if he desires to file a contest with the executive committee, shall, within five days after the result has been declared by the committee or convention, cause a notice to be served on the chairman or some member of the executive committee, in which he shall state specifically the ground of his contest; also shall serve or cause to be served on the opposing candidate a copy of such notice, at least five days prior to the date set for hearing by the committee. If special charges of fraud or illegality in the conduct of the election, or in the manner of holding the convention, or in the manner of making nominations, are made, and not otherwise, the chairman, or, in case he fails or refuses, any member of the committee, shall within twenty days after the primary election, or the convention, convene the executive committee, who shall then examine the charges, hear evidence and decide in favor of the party who in their opinion was nominated in the primary election, or in the convention; provided, that, before any advantage can be taken of the disregard or violation of any directory provision of the law, it must appear that, but for such disregard or violation, the result would have been different." Prior to the enactment of House Bill 857, the 47th Legislature amended Article 3148 by adding a provision thereto that the notice of an election contest might be served "by leaving the same with some person over the age of sixteen (16) years at the usual place of residence or business of such opposing candidate, or his last address." The emergency clause recited that under the existing law a candidate whose election was contested was "enabled to avoid the service of notice upon him, by leaving his usual place of residence or place of business * * *". Laws 1941, c. 292, § 2. This amendment was by House Bill No. 202, c. 292, Vernon's Ann.Civ.St. art. 3148. About the same time the Legislature amended Article 3152, Vernon's Ann.Civ. St. art. 3152, relative to an election contest before the district court, by adding substantially the same provision for service, thus preventing a candidate from defeating a contest by avoiding service. This amendment was effected by enactment of House Bill No. 203, c. 293. Both House Bills Nos. 202 and 203 were passed by the House April 10, 1941, and by the Senate May 14, 1941. They were approved May 16, 1941, and would have become effective ninety days after the adjournment of the Legislature on July 3, 1941. In this connection, it must be remembered that by virtue of Article 3146, as it then existed and as it

continued to exist until House Bill No. 857 became law, said statute expressly provided that such an election contest as the one in question could be brought either in the district court or before the executive committee and expressly provided: "* * * said executive committee and the district courts having concurrent jurisdiction."

Article 3148 was amended by Sec. 9 of House Bill 857 so that it now reads: "In addition to the powers and authority granted to the District Courts by Article 3130, as amended by this Act, where fraud or illegality is charged, if such charges of fraud or illegality be supported by some evidence, or by affidavit of reputable persons, and the ends of justice seem to require it, the Court shall have authority to unseal and reopen the ballot boxes to determine controverted issues, and the Court may recount, or under its direction cause to be recounted, the ballots cast in any or all precincts of the county to determine the true result of such election. In all such cases in which a reopening of ballot boxes is ordered, the Court shall exercise all due diligence to preserve the secrecy of the ballots, and upon completion of such recount, the said ballot boxes with their original contents shall be resealed and redelivered to the county clerk." Vernon's Ann.Civ.St. art. 3148.

Article 3149, R.S.1925, provided that either the district court or the executive committee might unlock and unseal the ballot boxes where fraud or illegality was charged and examine its contents. Section 12 of House Bill 857 provides: "Articles 3149 and * * * are hereby expressly repealed * * *".

Article 3150, as it existed prior to its amendment in 1941, provided: "When the *committee* has decided the contest * * *". Unless notice of appeal was given to the district court, the chairman of the committee should certify its findings to the clerk. As amended it reads: "When the *District Court* shall have decided the contest * * *". Vernon's Ann.Civ.St. art. 3150. Unless notice of appeal is given to the Court of Civil Appeals and an appeal bond filed, said Court shall certify its findings to the officers charged with the duty of providing for the official ballot.

Article 3151, as it existed prior to 1941, provided for an appeal to the district court from the decision by the executive committee of an election contest. By Section 12 of House Bill 857, that article was expressly repealed.

House Bill No. 857 was passed by the House May 13, 1941, by the Senate June 30, 1941, and was approved July 23, 1941; it became the law ninety days after adjournment on July 3, 1941, of the Forty-Seventh Session of the Legislature. Section 12 of House Bill No. 857 provides: "Articles 3149 and 3151, Revised Civil Statutes, 1925, are hereby expressly repealed; Article 3152, Revised Civil Statutes, 1925, as amended by Chapter 19, Acts of the Fortieth Legislature, as amended by Chapter 241, Acts of the Forty-Second Legislature is hereby expressly repealed; *all other laws* or parts of laws *in conflict with this Act are hereby expressly repealed.*"

After comparison of the applicable statutes as they existed prior to the enactment of House Bill No. 857 and the provisions of said Bill, we think it is clearly evident that since the effective date of House Bill No. 857 the Executive Committee has had no authority, power, or jurisdiction to pass upon such an election contest, and that the district court has exclusive jurisdiction over such contests. Article 3130 as amended expressly so provides, to wit: "The District Court shall have original and exclusive jurisdiction of all contests for nominations growing out of primary elections."

The conclusion is inevitable that the County Executive Committee had no jurisdiction or power to pass upon Hill's election contest, and that the Committee's actions relative thereto were void.

No question of the jurisdiction of the District Court has been presented. We, therefore, assume, without deciding, that said Court had jurisdiction of this injunction and mandamus proceedings.

Even if the trial court was without jurisdiction of this action, that would not affect the fact that the Executive Committee was without authority to entertain the election contest, and its action in that respect being void, would not affect the duty of the county clerk to ignore such action and have the ballots printed in accordance with the original certification with the name of Turner as nominee.

The judgment of the trial court is affirmed.